IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| FELICIA NORRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 11-G-3154-E |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The plaintiff, Felicia Norris, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that

end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process.  20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

    (3)    whether her impairment meets or equals one listed by the Secretary;

    (4)    whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

        In the instant case, the ALJ, David L. Stephens, determined the plaintiff met the first two tests, but concluded did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform her past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. When a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment (such as pain, fatigue or mental illness) also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony. Foote, at 1559.

## THE STANDARD FOR REJECTING THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony must be accepted as true. McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216. The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence. See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in

4

significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited. Id. This also holds true for the opinions of treating physicians.

### DISCUSSION

In the present case the plaintiff alleges she is disabled due to panic attacks, depressive disorder, anxiety, and muscle control disorder. The plaintiff argues that GAF scores assessed during her treatment at the Cheaha Mental Health Center, together with the testimony of the vocational expert at her hearing, establish that she is disabled.

During the plaintiff's treatment GAF scores were assessed on a number of occasions. An intake assessment on February 8, 2008, shows that the plaintiff was assessed a GAF score of 35 by a social worker. Record 188. The Global Assessment of Functioning (GAF) Scale is used to report an individual's overall level of functioning.

6

<u>Diagnostic and Statistical Manual of Mental Disorders</u> 32 (4th Edition, Text Revision) ("DSM-IV-TR"). A GAF rating of 31-40 reflects: "**Some impairment in reality testing or communication** (e.g., speech is at times illogical, obscure, or irrelevant) **OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood** (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." DSM-IV-TR at 34 (emphasis in original). On February 3, 2009, the plaintiff was assessed a GAF score of 45 by her therapist as part of a master treatment plan. Record 179. A GAF of 41-50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM-IV at 32 (emphasis in original). This treatment plan was approved by the plaintiff's treating psychiatrist on February 9, 2009. Record 181. On July 28, 2009, the plaintiff was assessed a GAF score of 50 by her therapist on an intake assessment and on a master treatment plan. Record 213. The plaintiff's master treatment plan was approved by her treating psychiatrist on July 30, 2009. Record 215.

    In addition to these GAF scores reported by treating sources, the plaintiff was assessed a GAF score of 58 by the Social Security Administration's consultative

7

psychologist, Dr. Kline, of March 19, 2009.[1]  Record 192.  A GAF rating of 51-60 reflects: "**Moderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers.)"  DSM-IV-TR at 34 (emphasis in original).

At the plaintiff's ALJ hearing the vocational expert was asked the following question:

> ATTY: Assume you have a person that has GAF scores at 50 and below, from a vocational standpoint, what would that – how would that be expected to the effect [sic] a person?
>
> VE: Well, that would indicate that the person would be too psychologically impaired to be expected to maintain the persistence and pace at all work or attendance necessary for competitive employment.

Record 273.

The ALJ's decision contains numerous errors.  The ALJ incorrectly asserts "the record shows that the treating mental health sources have never assessed a GAF of less than 50 for this claimant."  Record 19.  The plaintiff's treating psychiatrist approved of treatment plans that contain GAF scores of 45 and 50.  These GAF scores must be considered to reflect the opinions of the plaintiff's treating psychiatrist.  Therefore, the ALJ's finding that no treating mental health source assessed a GAF score less than 50 is contradicted by the medical record and is not supported by substantial evidence.

---

[1] The ALJ did not discuss our rely upon Dr. Kline's report.

The ALJ also incorrectly characterized a GAF score of 50 as representing only moderate symptoms.  Record 18.  As discussed above, a GAF score of 50 represents the presence of serious symptoms.

The ALJ stated in his opinion that the vocational expert's testimony was outside of his area of expertise.  However, the vocational expert clearly was asked to assess the <u>vocational impact</u> of GAF scores of 50 or below.  The ALJ cites no evidence to support his conclusion that such an opinion was outside the vocational expert's area of expertise and this finding is not supported by substantial evidence.

## CONCLUSION

The ALJ did not articulate reasons supported by substantial evidence for refusing to credit the GAF scores assessed by the plaintiff's treating psychiatrist.  Therefore, these GAF scores must be accepted as true.  The uncontradicted expert vocational testimony is that the GAF scores assessed by the plaintiff's treating psychiatrist indicate the presence of psychological symptoms that would prevent work.  The ALJ cited no evidence to support his refusal to accept the vocational expert's testimony.  Therefore, the testimony of the vocational expert establishes that the plaintiff is disabled within the meaning of the Social Security Act.  The action will be remanded instructions plaintiff be awarded the benefits claimed.

DONE and ORDERED 28 June 2012.

UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.